NATHAN MFG. CO. v. DELAWARE, L. & W. R. CO. et al.

(Circuit Court; N. D. New York. July 12, 1906.)

PATENTS—INFRINGEMENT—LUBRICATOR FOR LOCOMOTIVE ENGINES.

The Woods patent, No. 645,026, for a lubricator for the valves and cylinders of locomotive engines, was not anticipated, and discloses invention; nor is it limited in scope to the precise form of valve used in the by-passage, or the precise position of the valve-controlled by-passage and the choked passage with relation to the duct or pipe between the lubricator and the steam chest, shown in the drawing of the preferred construction. As so construed, *held* infringed.

This is a suit in equity to restrain alleged infringement of letters patent No. 645,026, dated March 6, 1900, and issued to Hugh Woods, assignor to the Nathan Manufacturing Company, for improvement in lubricators for the valves and cylinders of locomotive engines, and for an accounting. The defendant the Delaware, Lackawanna & Western Railroad Company uses upon its locomotive engines lubricators furnished by the Michigan Lubricator Company, and these lubricators furnished by this company are the alleged infringing devices. The defendant Michigan Lubricator Company has become a party to the suit, and has assumed its defense.

Wetmore & Jenner (Edmund Wetmore, of counsel), for complainant.

Kernan & Kernan (John B. Corliss, George S. Payson, of counsel), for defendants.

RAY, District Judge. The drawing of the patent in suit represents in vertical section and partly in elevation a lubricator embodying the invention claimed in its preferred form, and shows what is termed a "double-feed lubricator," one in which both of the cylinders and valves of a locomotive engine are lubricated from one common oil reservoir. The patent expressly states, however, that the number of feed outlets with which the lubricator is provided may be varied without departure from the invention. The specifications then give a general description of the lubricator, following this with a more specific description of the structure in which the invention is found. The specifications then state that in ordinary lubricators of this class each of the upper sight-feed brackets contains, near the outlet point into the oil pipe which leads to the cylinder, an outlet nozzle with an exceedingly small opening, which nozzle, in connection with the equalizing tubes, M, serves in the usual manner to equalize the pressure within the lubricator. Owing to the fact that the steam supply for the lubricator comes directly from the boiler, it is evident that the escape of steam and oil through the upper sight brackets is practically continuous, even though the throttle valve be closed and the engine motionless. It has been found, however, that when the throttle valve is opened and steam admitted to the steam chest the small volume of steam passing through the nozzles condenses within the oil pipes, resulting in a reduced pressure therein. This reduced pressure is not sufficient to resist the back pressure of steam from the steam chest, with the result that the feed of the lubricator becomes irregular, and eventually stops altogether. "It is the object of my invention to overcome this effect in a simple and reliable manner." The patentee then describes the mode and manner in which this objection is overcome, and says:

"It is the object of my invention to overcome this effect in a simple and reliable manner. To this end I combine with the lubricator and the oil or tallow pipe leading therefrom to the cylinder of the locomotive engine, through which pipe there is a constant flow of steam and oil in limited quantity to the cylinder through the usual plug or nozzle or its equivalent, a valve or piston plug, preferably of the differential type, controlling a steam passage from the lubricator side of the apparatus to the tallow pipe, and adapted to be operated by the back pressure from the cylinder, to open said passage to the tallow pipe under these conditions, and thus admit an additional supply of steam to neutralize the back pressure from the cylinder. I prefer to so arrange things

that, with the additional supply of steam, an additional supply of oil shall also be furnished at this time, the latter passing then not through the constantly open choke plug alone, but also through the passage or passages opened up by the valve. Thus not only is the back pressure from the cylinder neutralized or equalized by the additional volume of steam admitted at the lubricator end of the oil or tallow pipe, but the oil feed is increased also; in other words, the feed is increased when the throttle is open, and is decreased when the throttle is closed, because in the latter case the oil can pass through the small constantly open choke passage or plug only. These features, broadly considered, are not new with me, as a lubricating apparatus embodying said characteristics is shown and described in United States patent No. 267,430, granted to R. J. Hoffman on January 14, 1882."

The patentee then proceeds to describe what he employs in connection with a lubricator having suitable boiler, cylinder, and equalizing pipe connections, and then describes the structure which embodies the features mentioned and shown in the drawing, and then says:

"The operation of my improved device is as follows: When the engine is standing still or running on a down grade with no steam in the cylinders, the steam passing continuously directly from the boiler through the equalizing pipes, M, will press against the smaller head of piston, d, compressing the spring, h, and moving back the piston until the holes, f, will be covered by the partition, n, of casing, a. In this case only the very small hole, e, will be operative for the passage of steam and oil into the cylinder, and the lubricator will operate as an ordinary lubricator, with fixed outlet nozzle or choke plug. When steam, however, is admitted into the cylinders, it will press against the larger head of piston, d, and, aided by the spring, overcome the pressure of steam against the small end of the piston, which latter will then assume the position shown in the drawing, with its holes, f, opening into the recess, c. In this case, in addition to the small hole, e, the holes, f, will be open to the passage of steam and oil, and the increased volume of steam passing through these additional openings will effectually overcome the retarding effect of the back pressure from the cylinder. I believe myself to be the first to have devised a lubricating apparatus provided with suitable cylinder and equalizing pipe connections wherein the duct connecting the lubricator and the steam chest at any point in the length of the duct is provided with a minimum supply choked passage, a relatively larger by-passage, separate and distinct from the minimum supply choked passage, and a valve for controlling said by-passage automatically operated by variations of pressure within the duct. What I claim, and desire to secure by letters patent, is as follows:

"(1) In a lubricating apparatus provided with suitable boiler, cylinder, and equalizing pipe connections, and in combination with the lubricator and the steam chest or cylinder, a duct connecting the same containing a minimum supply choked passage, a relatively larger by-passage, separate and distinct from the minimum supply choked passage, and a valve for controlling said by-passage, automatically operated by variations in pressure within the duct at the times and in the manner substantially as hereinbefore set forth.

"(2) In a lubricating apparatus provided with suitable boiler, cylinder, and equalizing pipe connections, a casing communicating with the delivery end of the lubricator, provided with a choked or very small permanently open passage for continuous flow of steam and oil in restricted quantity from the lubricator to the steam chest, and with a valve-controlled by-passage separate and distinct from the minimum supply passage, for permitting an increased flow of steam and oil from the lubricator through the casing into the steam-chest, substantially as hereinbefore set forth."

The defendant presents two defenses—lack of patentable novelty in view of the prior art and noninfringement.

I have gone carefully over the prior state of the art, and considered all prior patents and devices of this description, and am

satisfied that the Hoffman patent does not anticipate the patent in suit, nor show that it is destitute of patentable novelty. This is also my conclusion in regard to the Schmidt and the several McCoy patents. To give a detailed description of these patents and of their operation would not be profitable. The changes made by Woods were new, useful, and involved such creative elements as to constitute invention. I think the most important feature in the Woods patent is the fixed minimum or choked passage separate from and independent of the valve-controlled automatically open and shut by-passage. The utility of this feature of the Woods patent is demonstrated by the fact that the defendant has adopted it, and strenuously contends for the right to retain it. I do not find it described or suggested in the prior art.

Coming to the question of infringement, it seems to me that infringement is established. Defendants' experts point out at least two features of the defendants' apparatus which it is contended take it out of the scope of the patent in suit. It is claimed that in the defendants' apparatus the choked passage and the valve-controlled by-passage is situated at the steam-chest end of the duct or tallow-pipe connection between the lubricator and the steam chest, instead of at the end nearest the lubricator, as shown in the drawing of the Woods patent and that the form of valve used by the defendants to control the by-passage is different from the preferred form shown by Woods. I cannot find that the patent in suit is so limited in terms or scope that the position of the choked passage and the valve-controlled by-passage with relation to the duct is material. In fact the patent says:

"I believe myself to be the first to have devised a lubricating apparatus provided with suitable cylinder and equalizing pipe connections wherein the duct connecting the lubricator and the steam chest at any point in the length of the duct is provided with a minimum supply choked passage, a relatively larger by-passage, separate and distinct from the minimum supply choked passage, and a valve for controlling said by-passage, automatically operated by variations of pressure within the duct."

I think the operation, function, and effect of the devices is the same located in any position along the duct. The defendants' valve which controls the by-passage is a ball valve, acting by gravity, while the valve of the Woods patent in suit is a differential valve, actuated by a spring. I do not see how this is material or avoids infringement. The Woods patent states that this differential form is preferential merely. The patent says that the piston valve is preferentially of the differential type, and that the patentee can, and prefers to, combine it with a spring. It is clear that the patent is not limited, and that either form of valve satisfies the patent.

Claims 1 and 2 of the patent in suit only are in question, and I do not think it would be profitable to discuss or go at length into the expert testimony or a minute description of the drawings and specifications and modes of operation of the defendants' lubricator. It is true that identity of result is not the test of infringement. Ordinarily, there must be substantial identity of means and of operation, and I think this is found here. The defendants claim that the ball valve

of the defendants could not be substituted for the piston valve of Woods without an entire reconstruction of the device. I do not think this is true, broadly stated. It is true that to substitute the one for the other would involve considerable reconstruction, and many changes in construction, but, if any difference in the mode of operation is involved, it is clearly contemplated by the explicit terms of the Woods patent, who provides for the use of either form of valve, and merely suggests the one as being preferred by him. The form of valve is not the essential feature of the invention disclosed by the Woods patent.

It is perhaps proper to mention that I have fully considered the disclosures made in the Woods file wrapper, and find nothing to change my views. The defendants press the point or inquiry rather as to the sufficiency of the description of the invention claimed in the Woods patent. All that is necessary is that the specification be so full, clear, and exact as to enable one skilled in the art to which the invention relates to make and use it without experiments of his own.

It follows that it must be held that claims 1 and 2 of the patent in suit are valid, not anticipated, and infringed by the defendant the Delaware, Lackawanna & Western Railroad Company as a user, and by the Michigan Lubricator Company as maker and vendor.

There will be a decree accordingly.